CASINO AIR CHARTER, INC., GULF INSURANCE COMPANY, INC., ESTATE OF GILBERT R. SOUZA, MARK B. RAYMOND, M.D., Appellants, *v.* SIERRA PACIFIC POWER COMPANY, a corporation, and THE HOME INSURANCE COMPANY, A New Hampshire Corporation, Respondents.

No. 9973

June 28, 1979                                   596 P.2d 496

*Erickson, Thorpe & Swainston, Ltd.*, and *William G. Cobb,* Reno; *Moore, Clifford, Wolfe, Larson & Trutner,* Oakland, California, *Cyril Viadro,* of Counsel, San Francisco, California, for Appellants.

*Woodburn, Wedge, Blakey & Jeppson,* Reno, and *Johnson, Greve, Clifford & Diepenbrock,* Sacramento, California, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

Gilbert R. Souza, a licensed pilot employed by Casino Air Charter, and his passenger, John H. Eichstedt, were killed in an aircraft accident shortly after takeoff on June 30, 1972. The plane, a Cessna 206, owned by appellant, Dr. Mark B. Raymond, was leased to Casino Air for charter flight purposes. The fatal flight had been coordinated by respondent, Sierra Pacific Power, at the request of the federal government in order to provide federal officials, including Eichstedt, from the Bureau of Outdoor Recreation an aerial reconnaisance survey of proposed power line routes into Incline Village, Nevada. Federal approval of the proposed construction was required.

On November 2, 1972, the heirs of Eichstedt brought an action for wrongful death against Sierra Pacific, Cessna Aircraft Corporation, Casino Air and Souza's estate. Sierra filed a motion for summary judgment on the ground that it was not negligent in its dealings with Casino Air and therefore not liable to Eichstedt's survivors. Sierra's motion was granted February 13, 1976, and the Eichstedts' subsequent appeal to this court was dismissed.

Notwithstanding the summary judgment, Souza's estate, Casino Air and Gulf Insurance Company (Casino's insurer) made a demand on Sierra and its insurer (Home) for coverage against any liability which might be imposed upon them in the wrongful death action. Casino Air claims status as an additional insured under the excess liability insurance policy issued by Home to Sierra.

Thereafter, Sierra and Home filed the instant action for declaratory relief, seeking a declaration that the policy provides no coverage to any other party to the wrongful death action. Below, in their motion for summary judgment, respondents successfully argued that none of the appellants are insureds as defined in the policy. In this appeal, appellants seek a reversal of the summary judgment, asserting the trial court erred in its determination that Casino Air is not an insured within the meaning of the policy. *Insured* is defined in the policy as follows:

> The unqualified word "insured," wherever used in this contract, includes not only the Named Insured but also:
>
> \* \* \*
>
> (e) with respect to any automobile or *aircraft* owned by the Named Insured or *hired for use in behalf of the Named Insured,* any person while using such automobile or aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with permission of the named insured. The insurance extended by this subdivision (e), with respect to any person or organization other than the Named Insured, *shall not apply*
>
> > (i) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof.
> >
> > (ii) to any manufacturer of aircraft, engineers or aviation accessories, or *any aviation sales or service or repair organization* or airport or hangar operation *or*

*their respective employees or agents,* with respect to any occurrence arising out of the operation thereof.

(iii) with respect to any hired aircraft, to the owner thereof or any employee of such owner. (Emphasis added.)

The issue before us is whether, for purposes of summary judgment, Casino Air is considered an additional insured under the terms of Sierra's policy. The matter raises a question of law, requiring an interpretation of the liability insurance policy.

Home's policy endorsement extends indemnity coverage for all sums its insured legally may be obligated to pay. As defined in the endorsement, "insured" comprehends Sierra as well as any person who uses or is responsible for the use of an aircraft hired for use in Sierra's behalf. In this connection, the trial judge specifically found that:

> [T]he accident involved in this case did not arise out of the use of any hired aircraft, or aircraft hired for use in behalf of Sierra Pacific Power Company . . . the aircraft involved was not used with the permission or consent of Sierra Pacific Power Company, and therefore the insurance policy issued by the Home Insurance Company does not afford any coverage to Casino Air Charter, Inc., or to its pilot Gilbert R. Souza, or his estate, or to any other person, organization or entity other than Sierra Pacific Power Company, and that there is no triable issue of fact remaining. . . .

In support of the lower court's determination, respondents maintain the policy unequivocally forecloses an extension of coverage to Casino Air under the facts and circumstances of this case. Gulf and the remaining appellants counter, arguing that the policy provides coverage to a permissive user of an aircraft hired in Sierra's behalf. We are constrained to agree with respondents.

Since it is apparent that Sierra does not own the aircraft in question, our review must focus on whether the plane was "hired." The policy does not define the term. *Cf.* Indemnity Ins. Co. of No. Amer. v. Pacific Clay Products Co., 91 Cal. Rptr. 452 (Cal. App. 1970), where "hired automobile" was defined in policy endorsement as automobile under contract in behalf of or leased to the named insured. In the trial court, the controversy turned on whether control of the aircraft by Sierra was required for a finding that the use was in its behalf. Monolith Portland Cement Co. v. American Home Assur. Co., 78 Cal. Rptr., 113 (Cal. App. 1969).

In Fratis v. Fireman's Fund American Ins. Companies, 128 Cal.Rptr. 391 (Cal.App. 1976), plaintiff sued and recovered judgment against McClatchy Newspapers for the wrongful death of her husband. At the time of the accident, decedent was working under a commission contract as a subscription solicitor for the McClatchy firm. The contract provided the employee an automobile mileage allowance for travel away from home. Following judgment against McClatchy, plaintiff filed suit against Fireman's Fund claiming status as an additional insured under its policy endorsement extending coverage to any person while using an owned or hired automobile, provided the use was with McClatchy's permission. Hired automobile was defined in relevant part as one "used under contract in behalf of . . . the named insured."

In the instant case, there was no hiring of an aircraft. Instead, Sierra contracted for the transportation services of an airplane and a qualified pilot. Sierra neither designated a particular aircraft nor took any part in the preparation of a flight plan. Indeed, Sierra has been judicially exonerated from tort liability arising from its conduct. Clearly, Home's excess liability contract provides no coverage to appellants.

We hold as a matter of law that in the instant factual context, the indemnity contract does not include insurance protection to Casino Air Charter as an additional insured since charter service rather than an aircraft was provided by Casino Air.

We therefore affirm the order granting respondents' summary judgment.